IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARI ANGELA CAMACHO, *et al.*,

   Plaintiffs,

          v.

HECTOR RIVERA SIACA, *et al.*,

   Defendants.

CIVIL NO. 17-1935 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Plaintiffs Mari Angela Camacho, Jose Ruben Camacho, and Viviana Conner (collectively, "Plaintiffs"), as heirs of Jose Ruben Camacho Camacho ("Mr. Camacho-Camacho"), filed a diversity suit against Hector Rivera-Siaca ("Mr. Rivera-Siaca") and his former spouse Luisa Estrella Claverol Siaca ("Ms. Claverol-Siaca") (collectively, "Defendants") alleging that they fraudulently transferred property in violation of P.R. Laws Ann. tit. 31, § 3198, and Articles 1802 and 1803, P.R. Laws Ann. tit. 31, §§ 5141 and 5142. Docket No. 1 at 2.

Before this Court is Ms. Claverol-Siaca's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant Rule 12(b)(1).[1] Docket No. 8. Plaintiffs opposed the Motion to Dismiss. Docket No. 10. Defendants replied to the opposition, Docket No. 16, and Plaintiffs Sur-Replied, Docket No. 17.

Although this Court finds that Mr. Camacho-Camacho was domiciled in Connecticut at the time of his death, Docket No. 10-1,[2] Plaintiffs must brief some issues about Mr. Camacho-

---

[1] Co-defendant Hector Rivera Siaca has not filed a responsive pleading.

[2] The Court considers Mr. Camacho-Camacho's death certificate to determine if this Court has jurisdiction over the matter. *Cruz-Martinez v. Hosp. Hermanos Melendez, Inc.*, 475 F. Supp. 2d 140, 144 (D.P.R. 2007) (citing

Camacho's widow to establish diversity. Thus, the Court **ORDERS** Plaintiffs to brief (1) whether Ms. Artiles-Posada is an indispensable party; and (2) whether the share or interest of Ms. Artiles-Posada, as part of the community property and as the surviving spouse, has been distributed and set out in compliance with the community property regime under Puerto Rico Law, P.R. LAWS ANN. tit. 31, § 3621.

BACKGROUND[3]

A. Factual Background

Plaintiffs, who are all domiciled in Connecticut, sued as heirs of Mr. Camacho-Camacho, who passed away in 2010. Docket No. 1 at 2. The case comes before this Court after a long history in the Commonwealth's courts, which began around 1986. *Id.* at 1.

The dispute commenced when Mr. Rivera-Siaca agreed to buy Mr. Camacho-Camacho's restaurant for $140,000.00, but only made an initial check for $5,000.00 and two subsequent checks that were returned because of insufficient funds. *Id.* at 3. As a result, Mr. Camacho-Camacho sued Mr. Rivera-Siaca in the Superior Court of San Juan ("state court") against. *Id.* In 1989, the state court entered a judgment for $113,000.00 plus $5,000 in attorneys' fees in favor of Mr. Camacho-Camacho. Docket No. 1 at 1, 3. Although Mr. Camacho-Camacho and his wife Zenaida Artiles-Posada (, "Ms. Artiles-Posada") moved to Connecticut, where they lived until Mr.

---

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 364-64 (1st Cir. 2001)) ("[C]ourt[s] enjoy [] broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine [their] own jurisdiction" while conducting this inquiry).

[3] The facts are borrowed from Plaintiffs' Complaint and are presumed to be true for purposes of this Opinion and Order.

Camacho-Camacho passed away, they filed multiple motions to renew their state court judgment.⁴ *Id.* at 4.

In the mid 1990's, Mr. Camacho-Camacho's attorney found that Mr. Rivera-Siaca had claimed the house where Ms. Claverol-Siaca lived with Defendants' children as a separate property when he filed for division of the conjugal partnership. Docket No. 1 at 4. During the division of the conjugal partnership, a judicial lien was placed on the property. *Id.* Before scheduling the auction to sell the house, Mr. Camacho-Camacho, however, had to wait until Defendants' children attained legal age. *Id.* at 5. After Defendants' children reached legal age, Mr. Camacho-Camacho scheduled the auction of the property. *Id.* Ms. Claverol-Siaca moved to intervene in Plaintiffs' case against Mr. Rivera-Siaca the day the auction was supposed to take place. *Id.* The auction was stayed by the state court after Ms. Claverol-Siaca claimed to have interest in the property. *Id.* at 6-7.

Plaintiffs were later informed that Mr. Rivera-Siaca had transferred his portion of ownership of the house to Ms. Claverol-Siaca, which totaled one hundred percent of its value.⁵ Docket No. 1 at 8. As a result, Plaintiffs sought to amend their claim before the San Juan state court to include the transfer in fraud of creditors.⁶ The state court, however, denied the motion and required Plaintiffs to file a separate suit. *Id.*

---

⁴ All the motions were granted by the San Juan state court. Docket No. 1 at 4.

⁵ Plaintiffs stated in their Complaint that they "conducted discovery as to Ms. Claverol-Siaca's claims, and learned that rather than having credits against Mr. Rivera-Siaca, she in fact owed him more in rent than the value of the property." Docket No. 1 at 6.

⁶ Plaintiffs claimed that "[s]ince Luisa Claverol Siaca is both Hector Rivera Siaca's ex wife and his first cousin, and both defendants knew of the debt owed to plaintiffs, the transfer of [the property] is presumptively fraudulent pursuant to 31 L.P.R.A. §3198." *Id.* at 8.

On April 27, 2016, Plaintiffs and Mr. Camacho-Camacho's widow Ms. Artiles-Posada, sued Defendants in this Court alleging fraudulent transfer of property. ("First Case"). *Zenaida Artiles Posada, et al. v. Hector Rivera Siaca and Luisa Estrella Claverol*, Civ. No. 16-1832 (CCC) (D.P.R. filed April 29, 2016). The plaintiffs argued that transferring Mr. Rivera-Siaca's primary asset was fraudulent and "should be rescinded and the entire property returned to [Mr. Rivera-Siaca] so that it can be placed in public auction to satisfy [Mr. Rivera-Siaca]'s debt with [P]laintiffs." *Id.* at 9. However, the First Case was dismissed without prejudice because Ms. Artiles-Posada was a resident of Puerto Rico and destroyed complete diversity between the parties. *Artiles Posada v. Rivera Siaca*, No. 16-1832, slip. op., 2017 WL 914610 (D.P.R. Mar. 7, 2017).

B. **Procedural Background**

On July 10, 2017, Plaintiffs filed this action without Ms. Artiles-Posada as a party. *See* Docket No. 1 at 2-3. On November 20, 2017, co-Defendant Ms. Claverol-Siaca moved to dismiss Plaintiffs' Complaint due to lack of subject matter jurisdiction arguing that Mr. Camacho-Camacho was a resident of Puerto Rico at the time of his death because he had his primary residence in Puerto Rico and was enjoying tax benefits under Puerto Rico law. Docket No. 8 at 1-2. Ms. Claverol-Siaca claims that Plaintiffs, as his heirs, are deemed to be residents of Puerto Rico . *Id.* at 2.

On December 11, 2017, Plaintiffs opposed Ms. Claverol-Siaca's Motion to Dismiss. Docket. No. 10. They asserted that Mr. Camacho-Camacho was domiciled in Connecticut at the time of his death. *Id.* at 2-4. Plaintiffs also argued that although Mr. Camacho-Camacho had a residence in Puerto Rico, his domicile was Connecticut. *Id.* at 6.

On December 28, 2017, Ms. Claverol-Siaca filed her reply opposing the motion to dismiss, in which she raised for the first time that Plaintiffs are precluded by *res judicata* from asserting diversity jurisdiction because this Court had allegedly entered a final judgment on this matter in the First Case. Docket No. 16 at 3. Ms. Claverol-Siaca also requested this Court to dismiss this case with prejudice because Plaintiffs did not prove this Court has jurisdiction under the diversity statute. *Id.* at 7.

Shortly after, Plaintiffs filed a "Supplement to Opposition to Motion to Dismiss" arguing that the requirements of *res judicata* are not present. Docket No. 17 at 1-2. Plaintiffs also submitted additional evidence about tax returns arguing that Mr. Camacho-Camacho's domicile was Connecticut. *Id.* at 2.

## ANALYSIS

### I. Res Judicata

The Court notes that Ms. Claverol-Siaca failed to raise the *res judicata* defense in her answer to Plaintiffs' Complaint. Since *res judicata* is an affirmative defense, it may be waived if not raised in the answer. *Indianapolis Life Ins. Co. v. Herman*, 204 Fed. Appx. 908, 910 (1st Cir. 2006). However, "a court on notice that it has previously decided an issue may dismiss the action *sua sponte*, consistent with the *res judicata* policy of avoiding judicial waste." *In re Medomak Canning*, 922 F.2d 895, 904 (1st Cir. 1990) (citation omitted). Thus, the Court considers whether Plaintiffs claims asserting diversity jurisdiction are barred by *res judicata*.

Under the doctrine of *res judicata*, "a final judgment on the merits precludes parties from relitigating claims that were or could have been brought in a prior action." *Universal Ins. Co. v. Office of Ins. Comm'r*, 755 F.3d 34, 37 (1st Cir. 2014) (citing *Haag v. United States*, 589 F.3d 43 (1st Cir. 2009)).

To dismiss an action on *res judicata* grounds, Puerto Rico law requires the movant to establish, "(i) the existence of a prior judgment on the merits that is final and unappealable; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted." *Id.* at 28 (citation and internal quotations marks omitted); *see also Lausell Marxuach v. Díaz de Yanez*, 3 P.R. Offic. Trans. 742, 745 (1975) ("[T]here be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.").

Ms. Claverol-Siaca's argues that Plaintiffs' claims are barred by *res judicata* because: (1) the District Court entered a final judgment on the merits in the First Case; (2) this case is upon the same causes of action and raises the same diversity allegations as the First Case, and (3) both cases involve the same parties. Docket 16 at 4. The Court disagrees.

First, here, as Plaintiffs correctly point out, the First Case was not adjudicated on the merits, but was dismissed without prejudice on jurisdictional grounds. *See Rivera Siaca*, 2017 WL 914610, at *2. Specifically, the First Case was dismissed because Ms. Artiles-Posada's presence as a plaintiff defeated diversity of citizenship since she had moved to Puerto Rico. *Id.* at 1-2.[7] Thus, the First Case does not have preclusive effect on this case as it was not dismissed on the merits. *See Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (explaining that "[t]he primary meaning of 'dismissal without prejudice,' . . . is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."). Since the dismissal of the

---

[7] In order to cure the defect, Plaintiffs moved the Court to voluntarily dismiss Ms. Artiles-Posada's claims without prejudice. *See Rivera Siaca*, 2017 WL 914610 at *2. Instead, the Court dismissed the case without prejudice and, as to the requirement of complete diversity, it stated that at that stage of the case complete diversity was already destroyed since it "must be determined at the time of filing the suit." *Id.*

prior case was without prejudice, the first requirement to dismiss a federal court action on *res judicata* grounds is not present.

Moreover, the First Case's dismissal was based on the absence of complete diversity, which does not necessarily prevent parties from refiling the case. *Rivera Siaca*, 2017 WL 914610, at *2; *see Cason v. Puerto Rico Elec. Power Auth.*, 770 F.3d 971, 977 (1st Cir. 2014). The First Circuit has stated that:

> Rigid insistence on the time-of-filing rule, rather than eliminating the jurisdictional defect the District Court found, would mean an almost certain replay of the case. . . . If an easily curable jurisdictional defect is discovered shortly after a case is filed, the district court should decide whether the plaintiff must be put to the bother of filing a fresh suit 'which at long last will merely bring the parties to the point where they now are.

*Id.* "[T]he pivotal question . . . is whether [the non-diverse party] is a severable and dispensable party. If so, it is in the interest of judicial economy for the Court to retain jurisdiction over the case by dismissing the claims against [the non-diverse party] without prejudice." *Zayas v. Mennonite Gen. Hosp., Inc.*, No. 14-1744 (JAG-SCC), 2016 WL 4548392, at *1 (D.P.R. Aug. 31, 2016) (citing *Cason v. Puerto Rico Elec. Power Auth.*, 770 F.3d 971, 977 (1st Cir. 2014); *Gorfinkle v. U.S. Airways, Inc.*, 431 F.3d 19, 22 (1st Cir. 2005))). Therefore, that the Court opted to dismiss the First Case because there was no diversity of jurisdiction does not preclude the parties from refiling the suit without joining the nondiverse party if said party is not indispensable.

For the reasons discussed above, this Court rejects Ms. Claverol-Siaca's *res judicata* argument.

The Court now turns to whether diversity of jurisdiction is present here. To address this question, we must first determine Mr. Camacho-Camacho's domicile.

## II. Diversity of Jurisdiction

Ms. Claverol-Siaca argues that Mr. Camacho-Camacho was a resident of Puerto Rico at the time of his death because he had his primary residence in Puerto Rico and was enjoying tax benefits under Puerto Rico law. Docket No. 8 at 1-2. Wherefore she contends that "his heirs and legal representatives are deemed to be residents of the same state as the decedent—Puerto Rico. *Id.* at 2. The Court disagrees.

Federal courts have subject-matter jurisdiction over cases in which the amount in controversy exceeds $75,000 exclusive of interests and costs, and where the parties are "citizens of different States." 28 U.S.C. § 1332(a). Once a party's jurisdictional allegations are challenged, it is up to that party to prove by a preponderance of the evidence that the district court has jurisdiction. *See Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) (citing *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992)).

In establishing diversity jurisdiction, citizenship is established by looking at the place where the parties are domiciled. *See Rodriguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 32 (1st Cir. 2011). A person's domicile is where he or she has a "true, fixed home and principal establishment, and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Id.* (internal quotations and citations omitted). Two things are required to establish or change domicile: (1) physical presence in a place, and (2) the intent to remain there indefinitely or make that place one's home. *See Aponte-Dávila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016); *Alers v. Barcelo*, 152 F. Supp. 3d 59, 64 (D.P.R. 2016).

The First Circuit has identified many factors that are relevant in determining a party's intent to remain in a place indefinitely: (1) the person's place of voting; (2) the location of the person's real or personal property; (3) the state issuing the person's driver's license; (4) the state

where the person's bank accounts are maintained; (5) the state where the person has club or church memberships; (6) the state where the person is employed; and (7) the state where the person pays taxes. *See Bank One*, 964 F.2d at 50; *Alers*, 152 F. Supp. 3d at 64-65.

Courts have repeatedly stated that no single factor is controlling. *Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004) (citing *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991)). "[T]he analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." *Id.* (citing *Lundquist*, 946 F.2d at 12).

Under 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."[8] According to Ms. Claverol-Siaca, because Mr. Camacho-Camacho was domiciled in Puerto Rico, Plaintiffs, as his heirs, should be considered citizens of Puerto Rico. This Court disagrees with Co-defendant's conclusion on Mr. Camacho-Camacho's domicile.

### Mr. Camacho-Camacho's domicile

Plaintiffs argue that Mr. Camacho-Camacho changed his domicile from Puerto Rico to Connecticut since the mid 1990's and lived there until his death in 2010. Docket No. 10 at 2. The Court finds that Plaintiffs have met their burden of proof by showing that Mr. Camacho-Camacho was domiciled in Connecticut.

---

[8] Similarly, under Connecticut Law, "[w]hen any person domiciled in this state dies intestate, the court of probate in the district in which the deceased was domiciled at his death shall have jurisdiction to grant letters of administration." CT GEN STAT § 45a-303 (2016).

1. **Evidence Submitted by Plaintiffs**

As evidence of Mr. Camacho-Camacho's physical presence at the time of his death, Plaintiffs submitted the certificate of death. Docket No. 10-1. Thus, the first element for establishing domicile is satisfied.

Regarding the element of intent, Plaintiff offered the following evidence: (1) documents from the Connecticut Probate Court stating that "Mr. Camacho worked in Connecticut and paid taxes in Connecticut; he owned [real and personal] property in Connecticut; and voted in Connecticut," Docket No. 10-2; (2) Mr. Camacho-Camacho's driver license issued by Connecticut; Docket No. 10-3, and (3) Mr. Camacho-Camacho and Ms. Artiles-Posada's federal income tax return and Connecticut resident income tax returns for 2008, 2009, and 2010. Docket No. 17-1; 17-2; 17-3; 17-4; 17-5; 17-6. Balancing the intent factors, the scales tip heavily towards finding that Mr. Camacho-Camacho' domicile was Connecticut.

Ms. Claverol-Siaca nonetheless contends that Mr. Camacho-Camacho's domicile continued to be Puerto Rico because he enjoyed a tax exemption on his property in Puerto Rico, which only applies to residential property. Docket No. 8 at 7-9. That Mr. Camacho-Camacho owned property in Puerto Rico and paid state or municipal taxes on that property, does not rebut the documentary evidence submitted by Plaintiffs. *Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004) (citing *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991). The proper test in not whether Mr. Camacho-Camacho availed himself of tax exemption in Puerto Rico. Rather, the proper inquiry is whether he was physically present in Connecticut and whether he intended to remain there indefinitely. Plaintiffs have put forth more than enough evidence to show that Mr. Camacho-Camacho's domicile was Connecticut before he passed away.

Plaintiffs, however, never addressed whether Ms. Artiles-Posada is an indispensable party in this case under Fed R. Civ. P. 19; and if she is, whether joinder of Ms. Artiles-Posada will not defeat the existence of complete diversity. This question is essential in determining whether the jurisdictional defect—which dismissed the First Case—was cured by not joining Ms. Artiles-Posada. *See Rivera Siaca*, 2017 WL 914610 at *2; *see Zayas v. Mennonite Gen. Hosp., Inc.*, No. 14-1744 (JAG-SCC), 2016 WL 4548392, at *1 (D.P.R. Aug. 31, 2016); *Cason v. Puerto Rico Elec. Power Auth.*, 770 F.3d 971, 977 (1st Cir. 2014).

### III. Indispensable Parties

Federal Rule of Civil Procedure 19 protects the interests of parties not yet involved in ongoing litigation. The First Circuit has established that "[i]f the court finds [a] party is anything less than indispensable, the case proceeds without [him or] her. If, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case." *Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 25 (1st Cir. 2010); *see Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572 ("[T]he question always is, or should be, . . . whether . . . they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them.") (citations omitted)).

Here, the Complaint was filed after the Court's dismissal of the First Case—because plaintiffs in that case failed to meet the burden of proof to overcome the challenge that complete diversity jurisdiction was destroyed by the fact that both Mr. Camacho-Camacho and his widow "are deemed to be owners and beneficiaries of the exemption on the property located in San Juan Puerto Rico." *Rivera Siaca*, 2017 WL 914610 at *2.

Here, Plaintiffs failed to address if Mr. Camacho-Camacho's widow released all her interest in the estate and whether or not Ms. Artiles-Posada is an indispensable party. Accordingly, Plaintiffs have not provided this Court with enough information to determine whether complete diversity is present in this case.[9]

Therefore, Plaintiffs are **ORDERED** to brief the following issues: 1) whether Ms. Artiles-Posada is an indispensable party; and 2) whether the share or interest of Ms. Artiles-Posada, as part of the community property and as the surviving spouse, has been distributed and partitioned in compliance with Puerto Rico community property regime.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' claims are not barred by *res judicata* and ORDERS Plaintiffs to brief, (1) whether Mr-Camacho-Camcho and Ms. Artiles-Posada's marriage is governed by Puerto Rico law or Connecticut law, and (2) whether any share or interest of Ms. Artiles-Posada—as the surviving spouse— in Mr. Camacho-Camacho's estates has been distributed and partitioned in compliance with the community property regime prevalent in the state having jurisdiction over this marriage.

Plaintiffs' brief is due by 9/6/2018. Defendants must respond by 9/20/2018.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Monday, August 27, 2018.

---

[9] Ms. Artiles-Posasa owned—as the documents attached in Plaintiffs' opposition to motion to dismiss show—part of Mr. Camacho-Camacho's estate acquired by him. *See* Docket No. 10-2. In addition, under both Puerto Rico and Connecticut law the surviving spouse is entitled to an hereditary portion of the deceased spouse's estate. *See Delgado v. Bowen*, 651 F. Supp. 1320, 1322 (D.P.R. 1897) *and* CT GEN STAT § 45a-303(c) (2016). This portion "comes by virtue of ownership, not inheritance." *Delgado v. Bowen*, 651 F. Supp. 1320, 1322 (D.P.R. 1987). Accordingly, Ms. Artiles-Posada may be entitled to part of the profits of the restaurant's sale.

                                                <u>s/ Jay A. Garcia-Gregory</u>
                                                JAY A. GARCIA-GREGORY
                                                United States District Judge